594 So.2d 280 (1992)
AETNA CASUALTY AND SURETY COMPANY, Etc., et al., Petitioners,
v.
Gordon F. BUCK, P.E., etc., Respondent.
No. 76925.
Supreme Court of Florida.
February 6, 1992.
Rehearing Denied March 27, 1992.
John M. Jorgensen of Scott, Royce, Harris, Bryan & Hyland, P.A., Palm Beach Gardens, for petitioners.
Isidro M. Garcia of Joseph A. Vassallo, P.A., Lake Worth, for respondent.
HARDING, Justice.
We have for review Pappalardo Construction Co. v. Buck, 568 So.2d 507 (Fla. 4th DCA 1990), in which the district court acknowledged conflict with Floridaire Mechanical Systems, Inc. v. Alfred S. Austin-Daper Tampa, Inc., 470 So.2d 717 (Fla. 2d DCA), review denied, 480 So.2d 1293 *281 (Fla. 1985), on the issue of whether privity should be found where an owner and contractor share a common identity so as to excuse the notice-to-owner requirement for perfecting a mechanics' lien. We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution.
Vincent J. Pappalardo (Pappalardo) is the president and sole shareholder of Pappalardo Construction Company (Pappalardo Construction) and the president and sole shareholder of Bay Colony Land Company (Bay Colony Land). Pappalardo Construction is the general contractor on the construction site known as Bay Colony. Bay Colony Land is one of the two partners in the joint venture which owns the property under construction. Gordon F. Buck (Buck) orally contracted with Pappalardo Construction to furnish metal construction materials to the construction site. The parties disputed the reasonableness of the delivery time and Pappalardo Construction subsequently withheld payment for the materials. Buck filed a claim of lien against Pappalardo. Pappalardo transferred the lien to a surety bond issued by Aetna Casualty and Surety Company (Aetna). Buck never served a notice of lien on the joint venture as owner of the property.
The trial court held that because the owner and general contractor shared a common identity, the owner's knowledge of the subcontractor's presence on the job, obtained through his actions as the general contractor, established privity of contract between the owner and subcontractor. The trial court granted attorney's fees against Aetna and ordered an increase in the bond amount to cover these fees. On appeal, the district court agreed with the trial court's definition of privity and affirmed the trial court's final judgment and order.

I.
Mechanics' liens are "purely creatures of the statute." Sheffield-Briggs Steel Prods., Inc. v. Ace Concrete Serv. Co., 63 So.2d 924, 925 (Fla. 1953). As a statutory creature, the mechanics' lien law must be strictly construed. Home Elec. of Dade County, Inc. v. Gonas, 547 So.2d 109, 111 (Fla. 1989). As a prerequisite to perfecting a mechanics' lien, all lienors who are not in privity with the owner, except for laborers, must serve a notice on the owner. § 713.06(2), Fla. Stat. (1987). The purpose of serving notice to an owner is "`to protect an owner from the possibility of paying over to his contractor sums which ought to go to a subcontractor who remains unpaid.'" Broward Atlantic Plumbing Co. v. R.L.P., Inc., 402 So.2d 464, 466 (Fla. 4th DCA 1981) (quoting Boux v. East Hillsborough Apartments, Inc., 218 So.2d 202, 202 (Fla. 2d DCA 1969)). In other words, as the trial court recognized, the notice requirement is just that, a notice to the owner that those not in privity with the owner are in fact providing improvements to the property. Because the purpose of serving notice is to alert the owner to guard against double payment, such notice will be excused only when privity exists between the owner and the subcontractor. See § 713.05, Fla. Stat. (1987).[1] Privity, however, is not defined in the statute. Tompkins Land Co. v. Edge, 341 So.2d 206, 207 (Fla. 4th DCA 1976).
In Harper Lumber & Manufacturing Co. v. Teate, 98 Fla. 1055, 125 So. 21 (1929), this Court held that privity requires both knowledge by an owner that a particular subcontractor is supplying services or materials to the job site and an express or implied assumption by the owner of the contractual obligation to pay for those services or materials. Id.; see also First Nat'l Bank of Tampa v. Southern Lumber & Supply Co., 106 Fla. 821, 145 So. 594 (1932). The Second District Court applied this definition of privity in Floridaire, and *282 the petitioners contend that it should be applied in the instant case.
Although we agree with the Harper Lumber and Floridaire definitions of privity, we also hold that privity is established where, for all practical purposes, a common identity exists between the owner and the contractor. Cf. Broward Atlantic Plumbing Co. v. R.L.P., Inc., 402 So.2d 464, 466 (Fla. 4th DCA 1981) (the three owners of a real estate project were also the principals in the contracting corporation). In such a case, service of notice on the owner is not necessary in order to perfect a mechanics' lien. Thus, we find that privity exists either when the owner knows a subcontractor is working on the job and that owner has assumed the contractual obligation for the work or when the owner and contractor share a common identity. In either situation, notice is not required.
In the instant case, the trial court made a factual determination that the owner and the contractor share a common identity. The record more than adequately supports the trial court's finding of this common identity. Here, the warranty deed and the Notice of Commencement both list the address of the owner as "c/o Vincent J. Pappalardo, 4440 PGA Blvd., Palm Beach Gardens, Florida." The construction contract between the joint venture and Pappalardo Construction lists the address of the owner and of the contractor as "4440 PGA Blvd., Palm Beach Gardens, Florida." Furthermore, the construction contract itself lists Bay Colony Land, of which Pappalardo is 100% owner, as the managing partner of the joint venture. Pappalardo signed the construction contract both in his capacity as president of Bay Colony Land, which is listed as the owner, and in his capacity as president of Pappalardo Construction. Pappalardo personally approved the subcontract between Pappalardo Construction and Buck. Pappalardo also acknowledged that he was on the job site once or twice a day in his capacity as general contractor and as the agent for the owner. In addition, the project manager for Pappalardo Construction, Palermo, believed that Pappalardo was the owner and, upon inquiry by Buck, informed Buck of such. Thus, even if Buck had actually given notice to the owner, he would have given it to Pappalardo.[2]
Accordingly, we disapprove the Second District Court of Appeal's decision in Floridaire to the extent it can be read as requiring notice to be served on an owner who shares a common identity with the contractor.

II.
The second issue on appeal is whether the 1987 revisions to section 713.24 of the Florida Statutes[3] make a surety liable for *283 all reasonable attorney's fees incurred by a lien claimant in an action on a surety bond. Prior to 1987, Florida's mechanics' lien statute provided that any lien transferred to a surety bond must include an amount of $100 to cover costs. § 713.24, Fla. Stat. (1985). The statute also provided that costs were not to exceed $100. Id. Furthermore, under the statute, attorney's fees were to be taxed as costs. § 713.29, Fla. Stat. (1985). Case law interpreting section 713.24, prior to 1987, held that attorney's fees were limited to $100. See Gulfstream Pump & Equip. Co. v. Grosvenor Dev., Inc., 487 So.2d 330 (Fla. 2d DCA 1986); Old General Ins. Co. v. E.R. Brownell & Assocs., Inc., 499 So.2d 874 (Fla. 3d DCA 1986); and Gesco, Inc. v. Edward L. Nezelek, Inc., 414 So.2d 535 (Fla. 4th DCA 1982), review denied, 426 So.2d 27 (Fla. 1983). The courts in these cases based their holdings on the express statutory language mandating that costs were not to exceed $100.
In 1987, the legislature amended section 713.24 by increasing the amount to be allocated to costs to $500 and by deleting in its entirety the restrictive language of "costs not to exceed $100." Ch. 87-74, § 6, Laws of Fla. The district court in Pappalardo determined that deletion of the restrictive language from the statute evidenced a legislative intent to expose sureties to liability for all reasonable attorney's fees incurred by a lien claimant in an action brought against a surety on a lien transferred to a surety bond. 568 So.2d at 510. Aetna argues that because the legislature specified that $500 was to apply to court costs, and because attorney's fees are taxed as costs under the mechanics' lien statute, the legislature intended to limit an award of attorney's fees against the surety to $500. We disagree with Aetna's interpretation.
When the legislature amends a statute by omitting words, the general rule of construction is to presume that the legislature intended the statute to have a different meaning from that accorded it before the amendment. Capella v. City of Gainesville, 377 So.2d 658 (Fla. 1979). We agree with the district court's interpretation that section 713.24, as amended, does not limit attorney's fees to $500. However, we disagree with the district court's opinion to the extent that it implies that section 713.24 allows a surety's liability to be increased beyond the face amount of the bond in order to cover costs. While section 713.24(3)[4] allows a trial court to order the party providing the bond to either purchase an additional bond or increase the existing bond, or to otherwise provide increased security, the statute does not permit the trial court to increase the liability of the surety beyond the amount of the bond. Ohio Casualty Ins. Co. v. Oakhurst Homes, Inc., 512 So.2d 1156, 1157 (Fla. 2d DCA 1987). Hence, any part of a lien-transfer bond not included in the foreclosure judgment can be awarded for costs. However, the lienor is left with an unsecured judgment against the owner for any costs which exceed the remaining face amount of the bond.
Accordingly, we approve in part and quash in part the decision of the district court and remand for further proceedings consistent with this opinion.
It is so ordered.
McDONALD, BARKETT and KOGAN, JJ., concur.
GRIMES, J., concurs in part and dissents in part with an opinion, in which SHAW, C.J. and OVERTON, J., concur.
GRIMES, Justice, concurring in part and dissenting in part.
In an effort to bail out a subcontractor who forgot to file a Notice to Owner, the Court has introduced troubling uncertainties into the mechanics' lien law. The *284 Court properly recognizes that privity exists when an owner knows a subcontractor is working on the job site and has assumed the contractual obligation for the work. However, the majority opinion then goes on to give privity an entirely new meaning for purposes of the mechanics' lien law by saying that it also exists whenever the owner and the contractor share a "common identity."
What is a common identity? Obviously, it is not restricted to circumstances where the corporation doing the construction and the corporation owning the property are owned by the same persons, because in this case Vincent J. Pappalardo had no connection with First American Equity Juno Beach Corporation, which was one of the two joint venturers who owned the property. Therefore, it must mean that as long as there are some owners in common, the contracting and owning corporations qualify as having a common identity. Yet, I do not believe that even the majority would say that a common identity would exist if one person owned ten percent of the stock of the two corporations.
The purpose of a Notice to Owner is to notify the owner that the subcontractor is looking to the owner for payment. Bishop v. James A. Knowles, Inc., 292 So.2d 415 (Fla. 2d DCA 1974). In this case, no Notice to Owner was ever served on anyone. Therefore, the joint venture was never placed on notice that pursuant to the Mechanics' Lien Law it was legally obligated to protect the subcontractor when it made payments to the contractor. Buck, himself, testified that he could have determined the owner of the property by looking at the Notice of Commencement posted on the site. However, he admitted he was looking to the contractor, rather than the owner, for payment.
If a Notice to Owner had been served on Pappalardo, then the discussion concerning Pappalardo's connection with the contractor and one of the members of the joint venture would be pertinent. Under those circumstances, it could be reasonably argued that Pappalardo was acting as an agent of the joint venture for the purpose of receiving the Notice to Owner. However, in the absence of the service of a Notice to Owner, the Court has essentially found Pappalardo Construction Company to be the alter ego of the joint venture without the showing of fraud or any effort to pierce the corporate veil. In rewriting the definition of privity, the Court has liberally construed a statute which is supposed to be strictly construed. Home Elec. of Dade County, Inc. v. Gonas, 547 So.2d 109, 111 (Fla. 1989) ("We hold `that the mechanics' lien law is to be strictly construed in every particular and strict compliance is an indispensable prerequisite for a person seeking affirmative relief under the statute.'").
I concur with part II of the opinion dealing with attorney's fees. Because I cannot agree with part I, I respectfully dissent.
SHAW, C.J. and OVERTON, J., concur.
NOTES
[1] Section 713.05, Florida Statutes (1987), provides in pertinent part:

713.05 Liens of Persons in Privity.  A materialman or laborer, either of whom is in privity with the owner, ... shall, subject to the limitations thereof, have a lien on the real property improved for any money that is owed to him for labor, services, materials, or other items required by, . .. the direct contract... . No lienor under this section shall be required to serve a notice to owner as provided in s. 713.06(2)... .
[2] In Florida, joint ventures are governed by partnership law, Xanadu of Cocoa Beach, Inc. v. Zetley, 822 F.2d 982 (11th Cir.1987), cert. denied, 484 U.S. 1043, 108 S.Ct. 777, 98 L.Ed.2d 863 (1988), and, under partnership law, the knowledge of any partner regarding a matter concerning partnership affairs operates as knowledge on the part of the partnership. § 620.615, Fla. Stat. (1989). Likewise, each one of several joint venturers has the power to bind the others in matters that are strictly within the scope of the joint venture. See Bessemer Properties, Inc. v. Barber, 105 So.2d 895 (Fla. 2d DCA 1958). Such power is inherent in the relationship. 8 Fla. Jur.2d Business Relationships § 691, at 736 (1978). The record here reflects that the acquisition and development of certain property for the construction of condominiums was the purpose of the joint venture, and the materials and services furnished by Buck were for the construction of those condominiums. Thus, when Pappalardo was on the job as "owner" and as contractor, he was performing within the scope of the joint venture and created privity by means of a common identity, thus relieving the subcontractor of the necessity to give notice to the owner.
[3] Prior to 1987, section 713.24, Florida Statutes (1985), provided in pertinent part:

(1) Any lien claimed under part I may be transferred ... to other security ... either to be in an amount equal to the amount demanded in such claim of lien, plus interest thereon at 6 percent per year for 3 years, plus $100 to apply on any court costs which may be taxed in any proceeding to enforce said lien. Such deposit or bond shall be conditioned to pay any judgment ... and costs not to exceed $100.
Section 713.24, as amended in 1987, now reads:
(1) Any lien claimed ... may be transferred ... to other security ... either to be in an amount equal to the amount demanded in such claim of lien .. . plus $500 to apply on any court costs... . Such deposit or bond shall be conditioned to pay any judgment or decree which may be rendered for the satisfaction of the lien for which such claim of lien was recorded.
[4] Section 713.24(3), Florida Statutes (1987), provides in pertinent part:

Any party having an interest in such security ... may at any time ... file a motion ... for an order to require additional security, [or] reduction of security... .