626 So.2d 1051 (1993)
C.L. WHITESIDE & ASSOCIATES CONSTRUCTION CO., INC., a Florida corporation, Appellant,
v.
The LANDINGS JOINT VENTURE, a Florida general partnership, and Ragland Construction Co., a Florida corporation, and United States Fidelity and Guaranty Co., a Maryland corporation, Appellees.
No. 91-3611.
District Court of Appeal of Florida, Fourth District.
November 10, 1993.
Blake M. Harmon and George A. Patterson of George A. Patterson, P.A., Deerfield Beach, for appellant.
Arnold L. Berman of Shutts & Bowen, West Palm Beach, for appellees.
FARMER, Judge.
This case requires that we decide whether there is a triable issue as to a common identity between an owner and a general contractor so that a formal notice to owner is not required to establish the mechanic's lien of a subcontractor. We find record evidence from which the trier of fact might find a common identity here and reverse a summary judgment dismissing a mechanics' lien claim for lack of a notice to owner.
Here the property was owned by a joint venture, The Landings Joint Venture. The equal partners in the joint venture were RV Landings, Inc., on the one hand, and Virginias at Delray, Ltd., on the other. RV Landings was designated the managing venturer. The owner entered into a contract with Ragland Construction to be the general contractor. *1052 Ron Gargano is the president of RV Landings, and he is also the president of Ragland Construction. He is also the principal shareholder of RV Landings and the sole share-holder of Ragland Construction. Gargano has no connection with Virginias. Gargano signed the construction contract on behalf of the owner, while an employee signed on behalf of Ragland. The notice of commencement was signed by Gargano for the owner, and he is designated as the person to receive notices for the owner.
One day after the notice of commencement was filed, Ragland entered into a contract with Whiteside & Associates Construction Company for the structural shell work on the project. Gargano signed on behalf of Ragland. Whiteside sent no notice to owner then, because it had dealt with Gargano and it believed thus that none was necessary. Several months later, there was a dispute between the general contractor Ragland and the subcontractor Whiteside. Only then did Whiteside send a notice to owner. Nearly one month after that notice was sent, Whiteside suspended its performance; three weeks after it stopped work, Whiteside filed its claim of lien.
Whiteside argues two points. First, it contends that the trial court erred in concluding as a matter of law that there was not enough commonality of identity between the owner and the general contractor  and thus no privity between it and the owner. Second, Whiteside argues that the question of common identity is itself a genuine issue of material fact and therefore the court could not grant a summary judgment on the issue. We agree.
The Florida Supreme Court has recently ruled on the common identity issue in Aetna Casualty v. Buck, 594 So.2d 280 (Fla. 1992), which reviewed our decision in Pappalardo Construction Co. v. Buck, 568 So.2d 507 (Fla. 4th DCA 1990). We are thus able to resolve the issue by examining that decision and by also examining Floridaire Mechanical Systems, Inc. v. Alfred S. Austin-Daper Tampa, Inc., 470 So.2d 717 (Fla. 2nd DCA 1985) rev. denied, 480 So.2d 1293 (Fla. 1985), which was disapproved in Buck. As Whiteside contends in its brief, we find the facts of Buck strikingly similar to those presented in this case.
In Buck, one man owned 100% of the entity which held a 50% interest in the joint venture that owned the land, and the same man also owned 100% of the general contractor. In this case, one man owned the principal interest in one of two joint venturers, who each owned a 50% interest in the owner. At the same time, the same man also owns 100% of the general contractor. To be sure, the trial court here also concluded that that man's ultimate ownership interest in the joint venture owning the property amounted to less than 21%.
We agree with Whiteside that the issue of common identity is not synonymous with common ownership. The notion is that the purposes of the notice to owner provisions of section 713.06[1] have been satisfied by a common identity between the owner and the general contractor. As the supreme court explained in Buck:
"The purpose of serving notice to an owner is `to protect an owner from the possibility of paying over to his contractor sums which ought to go to a subcontractor who remains unpaid.' Broward Atlantic Plumbing Co. v. R.L.P., Inc., 402 So.2d 464, 466 (Fla. 4th DCA 1981) (quoting Boux v. East Hillsborough Apartments, Inc., 218 So.2d 202, 202 (Fla. 2nd DCA 1969)). In other words, as the trial court recognized, the notice requirement is just that, a notice to the owner that those not in privity with the owner are in fact providing improvements to the property. Because the purpose of serving notice is to alert the owner to guard against double payment, such notice will be excused only when privity exists between the owner and the subcontractor. See § 713.05, Fla. Stat. (1987). Privity, however, is not defined by the statute. Tompkins Land Co. v. Edge, 341 So.2d 206, 207 (Fla. 4th DCA 1976).
In Harper Lumber & Manufacturing Co. v. Teate, 98 Fla. 1055, 125 So. 21 (1929), this Court held that privity requires both knowledge by an owner that a particular *1053 subcontractor is supplying services or materials to the job site and an express or implied assumption by the owner of the contractual obligation to pay for those services or materials. [citations omitted] The Second District applied this definition of privity in Floridaire, and the petitioners contend that it should be applied in the instant case.
Although we agree with the Harper Lumber and Floridaire definitions of privity, we also hold that privity is established where, for all practical purposes, a common identity exists between the owner and the contractor. Cf. Broward Atlantic Plumbing Co. v. R.L.P., Inc., 402 So.2d 464, 466 (Fla. 4th DCA 1981) (the three owners of a real estate project were also the principals in the contracting corporation). In such a case, service of notice on the owner is not necessary in order to perfect a mechanics' lien. Thus, we find that privity exists either when the owner knows a subcontractor is working on the job and that owner has assumed the contractual obligation for the work or when the owner and contractor share a common identity. In either situation, notice is not required." [e.s.]
Buck, 594 So.2d at 281-282.
The court then observed that in the notice of commencement the owner and general contractor listed the same address (except for a suite number); that the contracts had been signed by Pappalardo in his representative capacity for both the general contractor and the entity owning a 50% interest in the joint venture/owner; and that Pappalardo had personally approved the contract between the general contractor and the subcontractor. These facts are not fairly distinguishable from this case.
At the same time, the Buck court applied ordinary principles of partnership law to impute knowledge from the general contractor to the owner. The court wrote:
"In Florida, joint ventures are governed by partnership law, [citations omitted] and, under partnership law, the knowledge of any partner regarding a matter concerning partnership affairs operates as knowledge on the part of the partnership. [citation omitted] Likewise, each one of several joint venturers has the power to bind the others in matters that are strictly within the scope of the joint venture. [citation omitted] Such power is inherent in the relationship. [citations omitted] The record here reflects that the acquisition and development of certain property for the construction of condominiums was the purpose of the joint venture, and the materials and services furnished by Buck were for the construction of those condominiums. Thus, when Pappalardo was on the job as `owner' and as contractor, he was performing within the scope of the joint venture and created privity by means of a common identity, thus relieving the subcontractor of the necessity to give notice to the owner."
Buck, 594 So.2d at 282 n. 2. There is evidence in the record here that Gargano was a frequent visitor to the job site, although it is not clear that his presence was on behalf of the owner, or instead the contractor, or both. Buck seems to suggest, however, that it doesn't much matter whether he was there as the one or the other. He can hardly disclaim knowing what he knew.
Questions of privity and common identity are factual in nature. Summary judgment, on the other hand, permits a trial court to determine purely legal issues only where there are no disputes as to any material facts. The facts here as to the common identity issue cannot be viewed as any where close to being wholly in favor of the owner. The trial court erred in resolving the contested issue by a summary judgment.
REVERSED AND REMANDED FOR TRIAL.
ANSTEAD, J., and WALDEN, JAMES H., Senior Judge, concur.
NOTES
[1] See § 713.06, Fla. Stat. (1991).